OPINION. Smith, Judge: The narrow question presented by this proceeding is the period of holding by the petitioner of his 625 shares of Campbell Transportation Co. stock. Both parties are in agreement that he purchased the shares on March 6, 1940. They are in disagreement as to the date of the sale of the stock, the petitioner contending that the sale was made on September 10, 1941, and the respondent that it was made on July 31, 1941, the date upon which the Interstate Commerce Commission approved the application of the Mississippi Co. to purchase all the shares of stock of Campbell Transportation Co. Section 117 of the Internal Revenue Code defines a long term capital gain as meaning: * * * gain from tlie sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income. [§117 (a) (4).] Subdivision (b) of the same section provides: (b) Percentage Taken Into Account. — -In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: 100 per centum if the capital asset has been held for not more than 18 months; 66-2/3 per centum if the capital asset has been held for more than 18 months but not for more than 24 months. It is the position of the respondent that substantially all of the conditions of the escrow agreement, aside from the actual payment of the cash by the Mississippi Co., had been fulfilled or could have been fulfilled on or before August 10, 1941, and that the extension of the delivery date to September 10, 1941, was made for the purpose of making it possible for the petitioner and the other stockholders, who had purchased their stock at the same time that petitioner had purchased his, to claim that the gains made by them on the sales of their shares were long term capital gains rather than short term capital gains. We are convinced from a careful consideration of all of the evidence in this case that the request for the extension was not for the purpose of accommodating the petitioner and the other stockholders. In point of fact, petitioner had no voice whatever in obtaining an extension of the delivery date. There can be no question that where a person agrees to sell property, subject to certain conditions, and the property is placed with an escrow agent who holds the property until the conditions have been fulfilled, no sale is effected unless and until those conditions have been fulfilled. In Texon Oil & Land Co. v. United States, 115 Fed. (2d) 647, and Big Lake Oil Co. v. Commissioner, 95 Fed. (2d) 573, both involving the transfer of corporate stock through an escrow agreement, it was held that the transferee did not receive the stock until the delivery out of the escrow on the ground that the conditions upon which the escrow was premised were not completed until then. See also McLaughlin v. Commissioner, 113 Fed. (2d) 611; Howell v. Commissioner, 140 Fed. (2d) 765; certiorari denied, 322 U. S. 735. In the last named case an escrow agreement and capital gain tax were involved. The taxpayer contended a “long term,” and the Commissioner a “short term,” capital gain had been realized. The taxpayer and one Ferguson entered into an escrow agreement on October 6, 1937, whereby Ferguson agreed to lease certain land to the taxpayer, provided oil drilling was commenced on the land by November 21, 1937. The drilling of the well was begun on November 16 or 17, 1937, and on the same day the lease was delivered out of the escrow to the taxpayer. On April 10, 1939, the taxpayer sold his interest iri the lease for a substantial profit. The court held that no interest in the lease was obtained by the taxpayer until the delivery out of the escrow on November 16 or 17, stating with respect to the interest he acquired on October 6, 1937, as follows: * * * But all that he had. on that day was a contractual right to have a lease issued to him if and when he should comply with the terms and conditions of his contract. Taxpayer fails to recognize the difference between the absolute and the conditional. Prior to the starting of the well the lease was purely conditional, and would become absolute upon the compliance with the conditions. The parties traded with this thought in view. Taxpayer, doubtless, had this thought in mind when he made a contract of sale of a portion of his interest in the contract to the Consolidated Oil Company before the lease was delivered and then, upon the delivery of the lease, made an absolute assignment of the interest he had theretofore contracted to sell. In Norman v. Wilson, 41 S. W. 2d 331, the Court of Civil Appeals of Texas, Austin Division, held that a grantee was not entitled to delivery until he had fulfilled the conditions imposed by the escrow agreement, and that the placing of a conveyance in escrow to be delivered upon the performance by the grantee of certain conditions passed no title to the property until delivery. In Lucas v. North Texas Lumber Co., 281 U. S. 11, the lumber company had granted a ten-day option to purchase timber lands. The purchaser, on November 30,1916, gave notice that it would exercise the option and pay the purchase price as soon as papers were prepared. The vendor did not prepare the necessary papers to effect the transfer or demand the purchase price in 1916, but delivered the necessary papers on January 5, 1917, when the transaction was finally closed. The lumber company claimed that the profit was realized in 1916 and represented taxable income of that year. The Supreme Court held otherwise, however, and stated: An executory contract of sale was created by the option and notice, December 30, 1916. In the notice, the purchaser declared itself ready to close the transaction and pay the purchase price “as soon as the papers were prepared.” Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price in 1916. The title and right of possession remained in it until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year. * * * In the insta,nt case it is clear that the Mississippi Co. had no legal obligation to pay the purchase price for shares of stock of the Campbell Transportation Co. until all of the conditions of the escrow agreement had been complied with. They were not complied with prior to September 10, 1941. One of the terms of the escrow agreement was that the shares of stock should be held by the escrow agent until it received payment for the shares. This is an ordinary condition of an escrow agreement. It was plainly the intention of the parties, as shown by the escrow agreement, that the sale was not to be consummated until the delivery date. Paragraph 5 of that agreement stated: * * * As used in this Agreement, the term “Closing Date” means tbe last day of the month during which Buyer shall have given such notice and the term “Delivery Date” means the date on which the sale is to be consummated and the purchase price is to be paid, viz., tne 10th day of the month following the Closing Date. There is clearly no ground for the respondent’s contending in this proceeding that the “Closing Date” or any other date prior to the “Delivery Date” was that on which the sale was consummated. The delivery date was postponed in accordance with the escrow agreement. We hold that the petitioner held his 625 shares of Campbell Transportation Co. stock for a period of more than 18 months within the purview of section 117 of the code. Decision will be entered under Rule 60.